CONRAD MULLER et al.

*v.*

NATHAN WEISS et al.

[Decided November 28th, 1919.]

1. A grantor's release of restrictive covenants does not preclude other parties to whom he made deeds previously, or subsequently, from enforcing their rights against any purchaser violating the restrictive covenants.

2. The seller of land to a buyer who intended to erect an apartment-house is not entitled to specific performance where he misrepresented the dimensions of the lots and also the cost of excavating the rock on the property.

3. In a suit for a specific performance of a contract to buy lots, the evidence *held* to show that when the defendant buyer contracted to take the property, the only restriction thereon that he had been informed of was as to its use for saloon purposes, and not any restriction as to the erection of an apartment-house.

4. Where the seller sought to take advantage of a restriction against erecting an apartment-house, of which the buyer had not been informed, and the agent who negotiated the deal, anxious to secure his commissions, and the agent's son, attorney for both parties, knew of the other restrictions, but did not inform the buyer when the contract was signed late at night, the seller is not entitled to specific performance.

On pleadings and proofs.

*Messrs. Weller & Lichtenstein,* for the complainants.

*Mr. J. Philip Dippel* and *Messrs. McDermott & Enright,* for the defendants.

LEWIS, V. C.

This bill is filed for specific performance of a contract dated December 23d, 1915.

By this contract Nathan Weiss and wife agreed to sell and convey to the complainants certain lands and tenements, described in the bill of complaint, for the consideration of $45,000, subject to a mortgage of $25,000; and the complainants agreed to sell and convey to Weiss and wife the lands secondly described in the bill for the consideration of $10,000, subject to a mortgage of $2,500, and to pay the difference of $7,500 as follows: $1,000 in cash on the passing of title, and by giving back to Weiss and wife a mortgage for the sum of $6,500.

On the date fixed for the passing of title, the defendant refused to take title, for the various alleged defects, the principal one being that there were restrictions on the land of complainant of which he was not advised. On this question there was considerable evidence taken before me. It appears from this that the contract was drawn late at night by Isador Haber, a member of the bar. Weiss asked, as he had done on two previous occasions, whether or not there were any restrictions on the land; and Conrad Muller, the complainant, said he had heard that the town authorities would not allow any saloon there.

The contract was executed by both parties. The scrivener, Haber, made it read: "Subject to all restrictions of record."

It is clear to my mind that the defendants were misled, for not only were there restrictions as to the maintenance of a saloon on the property, but also one which prevents the carrying on of manufacturing; and the one which raised the greatest objection on the part of the defendant, which prevented the building of an apartment-house on the premises.

It is apparent from the testimony that it was known that the defendants contemplated putting up an apartment-house. Muller had exhibited to Weiss during their transactions a blue-print prepared when Muller expected to erect such a building; and Weiss proceeded, undoubtedly, with the negotiations with Muller in the belief that he could so use the property.

The complainants show by their subsequent action that the understanding as to the restriction was as Mr. Weiss testifies, for their attorney went to Gerber, the grantor of the Mullers, to secure a deed from him releasing the restrictive covenants.

The effect of such a deed, however, would not be to preclude the parties to whom he made deeds previously or subsequently from enforcing their rights against any purchaser violating the restrictive covenants. *DeGray* v. *Monmouth Beach Co., 50 N. J. Eq. 329; Henderson* v. *Champion, 83 N. J. Eq. 554; Wootton* v. *Seltzer, 83 N. J. Eq. 163.*

The statement of Muller as to the size of the lots also appears from the testimony to be material misrepresentation. He said the corner lot was thirty feet by ninety-five feet; and the inside lot twenty-five feet by one hundred feet. As a fact, the corner was thirty seven hundredths feet by ninety-three forty-six hundredths feet on the street lines; and the other three lots all less than one hundred feet in depth, although the centre line of number 55 is about six inches over one hundred feet. This tract is not a large one, and the difference in area, as represented by the complainant, is substantial; in the building of a large apartment-house on it as contemplated by Weiss its size was a matter of considerable financial interest.

There is also evidence as to a misstatement of Muller as to the cost of excavating the rock on the property. These misstatements are in themselves sufficient to warrant me in denying specific performance. In suits for specific performance anything

said or done to mislead the purchaser compels the court to deny relief to the complainant. *Bowker* v. *Cunningham, 78 N. J. Eq. 458; Pyatt* v. *Lyons, 61 N. J. Eq. 308; Brisbane* v. *Sullivan, 86 N. J. Eq. 411; Neptune Fisheries Co.* v. *Cape May Real Estate Co., 89 N. J. Eq. 552.*

There is, however, another phase of this case which must be adverted to now. The testimony of the scrivener as to the transaction late at night is rather astonishing, coming from a member of the bar. He says he was called in to draw the contract, which was prepared at the Muller home. His father, Hill Haber (a witness), a real estate man, sent for him prior to the meeting at the Muller home. Hill Haber had talked with Weiss and suggested that they ought to have the contract executed that night. Weiss told him that he ought to see his lawyer if that was the case, but he, nevertheless, went to the Muller home and then young Haber was sent for. The elder Haber was interested in putting the transaction through. He wanted to close it to get his commissions. The parties present when the contract was signed, therefore, were the Mullers, Hill Haber, Isador Haber, his son, and Weiss. Isador Haber's evidence is, that he was the attorney for both parties at the time the contract was made. He, however, on the witness-stand says that the reason he did not tell Weiss about all the restrictions is that he did not observe the full page of typewritten restrictions in the deed from which he was copying the description. He says that he did not hear the conversation between Muller and Weiss when Weiss asked about the restrictions, because he was busy preparing the papers. Surely, the defendant, under these circumstances, should not suffer in consequence of young Haber's neglect to make known to him the entire typewritten page of restrictions. In response to a question under cross-examination Haber said:

"I really believe I was derelict, I will admit that, but that is the situation. Possibly, if it had been in the afternoon I would have taken more time, but it was about midnight."

Pressing, further, the cross-examiner asked him: "*Q.* You have no doubt that Weiss was misled by that? *A.* It appears so from what he says now."

The testimony of Hill Haber corroborates to a large extent the statement of Weiss as to his conversation with Muller relative to the restrictions, *i. e.*, that all Muller said to Weiss about the restrictions was that a saloon should not be maintained on the property. He was asked by me as to what he heard regarding what his son was to put in the contract about restrictions, and his reply was:

"*Ans.* To put in the restrictions that there were no restrictions there except that there should not be a saloon there; there was no saloon dares to be put in there."

There is little doubt that it would be a hardship to compel Weiss to take the title. The evidence satisfies me that the complainants are seeking an advantage. Their testimony is contradictory and unsatisfactory. They have endeavored to convey the impression that their lack of knowledge of the restrictive covenants in their deed was due to unfamiliarity with the English language; yet, in completing the transaction, they had the services of a lawyer whose father was interested in closing it with Weiss to secure his commissions.

I cannot escape the conclusion that when Weiss contracted to take the complainants' property, the only restriction he had been informed of was as to the non-use of the property for saloon purposes. I am satisfied that he was misled. He is not a man of much information and experience, and he was without anyone at hand to advise him when the contract was executed, and a mere perusal of the testimony of young Haber will satisfy anyone that he made no attempt to give him any information regarding the restrictions contained in the same.

Specific performance will not be decreed where it will work a hardship or an unfairness, but the court must be satisfied that the claim is fair, reasonable, just and equal.

Specific performance in this case must be denied.